The first today's cases will be called as previously announced times will be as a lot of the council. The first case today is number 25-1024 United States v. Garrido Fort. At this time would counsel for the appellant please come to the podium and introduce himself on the record to begin. Just before we begin I just want to acknowledge we have our new portrait of Judge Thompson up in the back of the courtroom for the first time. Okay you may begin. Good morning may it please the court, Chief Justice Barron, Justices Lynch and Monacovo. My name is Ted Lothstein and I have the privilege of being a CJA lawyer here on behalf of Garrido Fort. And I hope to make three points during this argument but will of course take questions at any time not that I have any choice in that matter. And those three and I would like to reserve two minutes rebuttal please. You may. And thank you and those three points first are a critique of the government's approach to the facts in this case as not being consistent with the different standards of review for the different issues. And a second point that the government misreads the record when it claims that Honorable Joseph LaPlante declined to impose a guideline enhancement for homicide offenses solely because the state of New Hampshire failed to prosecute any homicide offenses against Mr. Fort. And third a very small point that we disagree that any dicta in Rahimi binds this court in any meaningful way. So jumping into the first point so the government's approach to the facts just can't be reconciled with the principle that for the justification defense the denial of it that the facts are viewed in the light most favorable to the defendant. Mr. Fort seeking to present the defense. Counsel the district court who's ruling you are attacking here. It's the district court's version of the facts not the government's version of the facts that are at issue. The district court said it was taking the facts in your client's favor. But there were also some statements of fact in your appellate brief which are plainly incorrect in light of the video evidence. So why don't you instead of attacking the government's theory tell us what's wrong with the district court's recounting of what happened in this case. Certainly your honor. I mean there's two different district courts here. Judge Elliott decided the denial of the justification defense and Judge LaPlante issued a sentence that we're saying is substantively unreasonable. And so I'm just saying that the government's brief fails to distinguish the different standards of review when it addresses the facts related to this case. So the government's brief begins with a sentence saying that this case. But since we have to get to the judgment just put aside the brief for a second. What is wrong with the district court's ruling? On the justification defense? Whichever one you want to be attacking right now to us. Sure. Well what's wrong with it. Begin with the justification defense your honor. So what's wrong with the government's ruling is that first of all it does not take the light the facts in the light most favorable to Mr. Fort when it's examining. So what are the best facts for Mr. Fort that were before the district court such that you say the justification instruction should have been given?  I mean the best facts are that first of all he's possessing a firearm on his own property and then right in front of his own property. Okay so this is not a lot of the cases in this area have to deal with people who are engaged in street violence or gang violence and things like that. Number two there is in terms of the temporal requirements on the back end he surrendered the firearm. Counsel let's start with your first point. He possessed the firearm before he went outside to confront the guy who he eventually shoots. So first he possesses it in his house. Okay are you saying it was necessary for self-defense of the house? I want to chop this into its different segments. Sure. So the firearm belongs to his girlfriend Amanda Lovejoy. She bought it but he took physical possession of it inside the unit and then he chose to go outside when he could easily have just chosen to stay in the unit or he could have chosen to go outside but not to possess the firearm when he went outside. Well he didn't feel safe going outside without it because of the person Mr. Colletti who was right in front of the house. I'm still on your first point. When he's outside he is not on his personal property. Correct? So you see in the videos you see him walk across his property and then walk off screen and I agree that the area where the altercation begins is sort of in the street right next to his property and off screen. Yes. And in fact it's his girlfriend's grandfather who owns all of that property. I don't think that that matters. I mean he's living there. Okay you're the one who started with this point. What's your second point? Well first of all I agree that the strongest challenge to this is that he begins in the house and goes outside. That is the biggest impediment, biggest hurdle we have to overcome. How do you overcome that? What's that? How do you overcome that? Because as he proffered, excuse me for one second, this person in the past had called him the N-word. He knew that this person was a drug addict who had committed crimes in the area including robbery, assaulted a person, stole money from a church, purchased illegal drugs from the homeowner you're talking about or the homeowner's sons, the Janverins. Believed that Colletti had intentionally damaged his car, wanted to talk to Colletti about this and believed that Colletti was a dangerous person. He wanted to talk to him? That is in the light most favorable of the state, yes. No, no. How is that helpful to you for justification defense? Because he didn't feel safe talking to this person. Does he have a justification to break the law? His desire to talk to the person then justifies him possessing even when the reason for the possession is so he can talk to someone? With the person in front of his house, he didn't feel like he could safely leave his house under the circumstances. That's the first time you've said that. The first time he could leave his house at any point? That's different than I now want to initiate a conversation with someone who may be dangerous. Therefore, I can pick up a gun that I'm not allowed to have and now claim I'm justified in possessing that gun so that I can initiate a conversation with someone who I think will be dangerous. That's an unusual kind of justification defense. Both are true. He wanted to initiate a conversation with a person and he did not feel safe being anywhere near this person without the firearm. Yes, both are true. But he didn't have to be near the person. Well, I mean, he shouldn't have to cower in his house. That shouldn't be the reason why. How was he cowering in his house? The guy he shot was not coming into his house. Apparently, your client was upset because he thought the guy had scratched the mirror on his car. And he thought maybe it was deliberate. He believed that the other person had intentionally damaged his car. And therefore, what? How is that? And that was, what, the day before? How does that translate into it's a threat to him in his apartment? Well, I mean, part of our argument is that if the justification, when you use a firearm to defend yourself, you know, part of our argument is because he's in his own home and on his property, if the justification defense standards we have now, if they don't allow what he did, then the standards just can't be reconciled with the current Second Amendment jurisprudence. His intention was to walk out with it concealed. And he didn't bring it out in a light most able to Mr. Ford. He did not bring out and display the firearm until he was being attacked with by Mr. Coletti wheeling an anchor shaped weapon or tool. So that is our backup position. The shooting did not occur then. The girlfriend took the pipe or whatever it was away from the guy. That is not when the shooting occurred. The guy was no longer wielding this cudgel or whatever it was. It was several minutes after that, that the shooting occurs. Well, I, I believe in the light, most fable of state that Mr. Ford proffered that, that, that first he goes out there and then he's attacked with a weapon and he backs away. But he's possessing it already. No, the light, most fable of state. He, I mean, so Mr. Ford, he Brent, he brings out the firearm only after he's being attacked with brings it out, but he's possessing it. Yes. He brings for them. That's correct. Yeah. So if you have to, for your second amendment argument, if the justification argument fails, obviously the justification argument succeeds, you, you walk away happy today. But if the justification challenge fails, you just said you're making an independent second amendment argument. Yes. That notwithstanding, it doesn't meet classic justification defense. It meets some kind of justification that the constitution of the second amendment must recognize. Notwithstanding, as I read your brief, you're not saying that in general, felons may not be prohibited from having firearms. Correct? You're agreeing, you don't make any argument that there's a general problem with the felon in possession. No, there's no facial. You just say it has to have a carve out for, and then what is the bounds of the kind of justification that doesn't meet the actual justification defense that the second amendment nonetheless recognizes if you're not also saying it's impermissible to ban felons from having the possession of as a facial matter. How would you articulate what that, what that gap is? I mean, the government correctly points out that I make this argument in two different sections of the brief in different ways, right? So I just said the fallback for the justification argument, if Judge Lynch is correct that I just can't meet that first prong, the fallback is then these standards can't be reconciled with the second amendment. What are they? What's that? What is that? You have to give some shape to it for the second amendment challenge to be developed so it can be coherent and understood. What is the kind of justification that short of the general self-defense notion that rests under Heller, because you're not claiming there's a Heller problem facially with prohibiting persons like your client from having a firearm. You're saying also, even if he doesn't meet the actual justification defense, the second amendment somehow carves out something for, for what? The as applied challenge is that he's on his own property concealing the weapon. And yes, he does step off his property, but there's literally no way he could go anywhere without stepping there. So again, kind of fall back to, you know, he shouldn't have to cower in his home in terms of reasonable alternatives. So it's about possessing the firearm solely for self-defense. The government has no evidence that he possessed it for any other reason, whether target shooting or gang violence or anything. But that would, that would mean that any person who is a felon could come in and say, even though the prohibition against felons is that possessing a firearm is constitutional. So long as I represent, I'm not going to hunt with it. I'm not going to use it for target shooting. I just have it on the prospect that I might need it for self-defense, that that's carved out. No, I don't. That's not your position? No, I don't agree with that because. So then what is your position? Because he possesses it on his property for, you know, 30 to 60 seconds before the altercation begins. So is the important part the possession on the prop, on someone's own property? It's not, and yes, and not just subjectively for self-defense. I mean, we, we know he used the firearm in self-defense. The state of New Hampshire, you know, made a public announcement that we cannot prosecute him for any offense other than felon in possession, which they moved over to the feds because we cannot disprove self-defense. So it's not a general defense that anyone can say, yeah, I keep it in my home for self-defense. That is not, that would be a much broader challenge. We're making a very narrow challenge that in, that in the 60 seconds that he possessed it, he possessed it for self-defense against a known threat. And I just want to say that, that we, he was right. I watched the video twice this morning. Where does 60 seconds come from? This was not over within 60 seconds. I'm talking about him walking out from the house to the area of the altercation that's off screen. That's what I'm talking about. So you're saying at the moment, just so if I follow, at the moment he actually confronts the person, you say if that's when the first time he got the gun, then he'd have just classic self-defense. If he's being threatened at that moment, is that the idea? And so the period that you have to say maybe goes broader than that is the 60 seconds where he chooses on his own to go out and confront the person. He's, he's going to, he, I don't agree with the confront. That, that's one of the things that I have a problem with. I don't, I don't mean in a hostile way. He wanted to talk to the person. I mean, but Judge Elliot actually found that he didn't go to confront, you know, in the light most favorable for it, he went to talk to him, yes. To try to solve the problem. It's hard to talk to people you don't confront. Right. But sometimes confront has a stronger, a stronger, and, you know, it makes him the initiator of it. Thank you. Oh, go ahead. Just, you know, we've, you've put a hypothetical out there that the Second Amendment carries a justification defense, which is different from the common law justification defense. Even if I were to start down that track, our common law comes from English common law. Why would we think that the Second Amendment embodied something other than the English common law tradition? You've been asked repeatedly, what are the boundaries of your Second Amendment justification? And you haven't given us any answer other than the usual common law type issues. I mean, I guess I respectfully disagree, and I just want to say that. Disagree with what? I disagree that I haven't provided any justification. This is a very narrow time frame. If the government could have proved any other day they had a firearm, they would have. No, we're back to your hypothetical that the Second Amendment itself carries a justification defense, which is different than the common law justification defense. What are the differences? And here, there's all these cases like Heller and McDonald that talk about when he's on his own property, the right isn't his strongest. But again, we're not saying he can keep it there every day. If the government could have proven that he had the firearm the day before, they would have alleged, indicted that day because they wouldn't have all this mess. I totally understand. Last time before you have some rebuttal time, but I think Judge Lynch's question is, insofar as that set of facts you're conceding for purposes of assumption so that we can get to the Second Amendment piece of it, that that set of facts does not track the common law definition of justification. Since the common understanding is that the Second Amendment has roots in English common law tradition and American common law tradition, it is far from evident why we would read the Second Amendment to have incorporated a justification defense that is more favorable to defense than the common law defense. Is there any answer to that concern? Well, I mean, my argument is stronger, I think, in the as-applied challenge where we can focus on, you know, that the right is strongest within the home and he's only on the property, which I do say is his property. He's a tenant. It's his property to defend himself on. And it's only for the minutes, the minute before the altercation begins. It's not his firearm. The government had no basis to prove that he possessed it any other day, or they would have indicted that because we wouldn't have all these issues of a racially motivated attack that resulted in a tragedy. Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for the Government please introduce himself on the record to begin? May it please the Court, Alexander Chen for the United States. Your Honors, the moment that Garrido Fort stepped outside of the Jameron home armed with a gun, he was not under an imminent threat of death or serious bodily injury. He thus failed to meet the first Leahy factor, and the district court correctly precluded him from asserting. Not to quibble with this, but that's true even before he stepped out of the house. Correct, Your Honor. So the moment he picked up the gun in the house, he was not under an imminent threat, and at that point there's a 922G problem. Correct. I agree, Your Honor. Moreover, in the government's view, Fort's constitutional challenge is entirely bound up on the assumption that he has made a colorable justification defense. But that doesn't seem to be quite an accurate reading of his brief. I mean, you just heard what I heard, and he just said the opposite of what you just said. To the extent that counsel is advancing this argument that the Second Amendment includes a separate right of justification, separate from common law, there is no jurisprudence from this court, from the Supreme Court, or from any court of appeals that I'm aware of that supports that claim. Here's just a puzzle, and this is a puzzle that I think is a creation of the Bruin framework, and you tell me how we should deal with it. If I understand it, burden is on the government to demonstrate that the firearm regulation is consistent with the nation's tradition and history. Correct, Your Honor. So what is obligation of challenger once they put out some possible Second Amendment right to get to the point where the burden then shifts to you? Because when you say there's no jurisprudence, okay, but burden's on you. How do we deal with that? That's, to me, just a puzzle that the Bruin framework is creating that I'd like your help with. And I think that certainly remains an open question, Your Honor, with the courts of appeals. I think this is something that has not been fully fleshed out. What's the it that has not been? Whether this purported burden shifting that once the government has shown the historical tradition that justifies the firearm regulation in question, that if the defense then proffers or comes up with an alleged new constitutional framework, whether the government has any burden to rebut that. But think about it in the as-applied context. Let's say they say they're challenging a felon in possession ban. They say it's a nonviolent felony. As I understand it, the way the courts have handled that, and I haven't understood the government to be taking a different position, the government can't respond to that by saying, well, facially, all felon in possession statutes are constitutional because of the historical tradition. And then burden shifts to defendant to show, no, there's a special tradition exempting nonviolent felonies. I had understood the government has the burden to show that there's a tradition in history that supports even application as to nonviolent felonies. So if that's right, how is it different here? No, I think that's right, Your Honor. Certainly in the courts of appeals that have accepted as-applied challenges, I believe the Third Circuit in Range and the Fifth Circuit in Cocksham, they did put the burden on the government to show that the as-applied challenge fit within the constitutional framework. And are you saying that that's wrong? I think this Court's opinion towards Rosario still controls. Suppose it doesn't. Suppose it doesn't. Then under Bruin, do you think that Range and the Fifth Circuit were wrong to put the burden on the government as to the as-applied challenge? Paul, can Your Honor receive the question? Putting Torres-Rosario aside, under the Bruin framework, do you think the government bears the burden of showing the history and tradition as to as-applied challenges, or were the Fifth Circuit and Third Circuit wrong to proceed in that manner? I think Your Honor is correct that the government would bear the burden in this case. However, even putting Torres-Rosario aside, 922G1 remains constitutional as to all its applications and is noted by the government in its briefing below and certainly in the cases later before the Court today. There is a rich tradition of legislatures going back to 17th and 18th century England. Here's why this is of some significance, as I see it. It is certainly the case that if there is no circumstance in which a felon may possess a firearm and that the Second Amendment allows that lifetime prohibition, that his challenge will fail, even as applied. But that's quite a significant holding for this Court to issue, if there's no reason to confront that issue. And so we're asking you, is there any way to address his as-applied challenge that would not require us, in affirming the decision below, to conclude that in every application a felon can be prohibited from having a firearm for life? So as I understand Your Honor's question, if we look at the historical tradition, again going back to the 17th and 18th centuries, there were a variety of felonies, violent and nonviolent, such as smuggling and counterfeiting, that carried far worse penalties than the loss of the right to possess a firearm. Moreover, there is a rich history of legislatures, the English Parliament, colonial legislatures, and the First Continental Congress, categorically disarming individuals who committed serious crimes, both violent and nonviolent. It is from that tradition that 922G1 is drawn. And moreover, the Supreme Court, in dicta, admittedly dicta, but in Heller and MacDonald and— But that's the broad argument. I thought earlier you were suggesting that, even accepting that the government has a burden to show history and tradition consistent with the crime at issue and as applied attack, that nonetheless this is a defense, and normally it is on the defendant, once the government has put forth enough evidence, to then argue and present evidence sufficient to show the defense. And so there are several shiftings of burdens that happen in at least this situation, where the defense is a justification defense, and that your opponent has not shown any error under the common law rejection of the defense. He hasn't presented any Second Amendment alternative to that. That's exactly right, Your Honor. Certainly under the common law, he is not satisfied. The required showing as enunciated by this court in Leahy. Do we have—I mean, defenses usually fall to a defendant, and the justification defense, at least a common law, clearly the burden was on the defendant. Are there any court of appeals decisions out there under the Second Amendment that talk about this defense and burden shifting for classic type defenses, like an insanity defense or something like that? Certainly none. None of the courts of appeals have adopted anything along those lines. See, mostly it won't come up, because any defense that fits within the common law is likely, at least you're not contesting, a valid defense under the statute itself, so you never reach the constitutional question. Correct. So it's only going to come up when they're asking for some relatively unusual form of the defense. But I just think it's just a puzzle, is that it's sounding, that kind of argument, sounds as an as-applied Second Amendment challenge. They're not contesting that when you get to the defense itself, the burden would be on them to prove the fact sufficient to show the defense is triggered. But the Second Amendment claim is, as applied, there has to be room for that defense. Well, under Bruin, the way it reads, it's as if, okay, as long as they say that, then you have to go scour the books and show us some tradition showing that, actually, there was no such carve-out, even though we have no reason to think there was any carve-out to begin with. That seems like an odd way to structure legal analysis. But you're not disagreeing that it's odd, but you're not sure what we should do either. I agree that it seems odd to me as well, Your Honor. What would your position be if, let's say this was a, you agreed, pure self-defense and it worked, right, or justification. He had a true justification to pick up the gun as a felon. I presume you wouldn't even be charging him with 922G. Of course, it would all be fact-specific. In this exact situation, it would be possible that we would not have charged him if he had a legitimate self-defense claim. Yes, Your Honor. Unless the Court has any questions. We have a lot. Thank you. Any further questions, I would ask the Court to affirm. Maybe they're better addressed to the Supreme Court than to you. Yes. Thank you, Your Honors. The Government asks you to affirm. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce himself on the record to begin? Yes, Ted Rothstein, and I don't have any rebuttal. Thank you. Thank you very much. Thank you, Counsel. That concludes argument in this case.